UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANTA DIGNA CRUZ, <br><br> Plaintiff, <br> v. <br><br> THE MAJESTIC STAR CASINO LLC, <br> THE MAJESTIC STAR CASINO II, LLC, and <br> MAJESTIC STAR HOLDCO LLC. <br><br> Defendants. | Case No. 1:20-cv-05301 <br><br> Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

In this negligence action, Plaintiff sues Defendants The Majestic Star Casino LLC, The Majestic Star Casino II LLC, and Majestic Star Holdco LLC, for injuries she sustained when she fell in a casino hallway. [24]. Defendants move for summary judgment. [72]. For the reasons explained below, this Court grants Defendants' motion.

### I.  Factual Background[1]

On September 8, 2018, Plaintiff traveled to Majestic Star Casino LLC for her weekly visit. [87-1] ¶ 1. That morning, Plaintiff had her last meal at approximately 10:00 a.m. at home. *Id.* ¶ 2. Being a Type II diabetic, Plaintiff also took her daily dose of insulin and checked her blood sugar level, which was normal, at 103. [93] ¶ 2; [73-6] at 68.

---

[1] The following facts come from Defendants' Local Rule 56.1(a)(2) statement of material facts, [73], Plaintiff's statement of additional facts and responses to Defendants' statement of material facts, [87], and Defendants' response to Plaintiff's statement of additional facts, [93].

Plaintiff arrived at the casino around noon. [87-1] ¶ 1. The casino consists of two boats connected by a midway.[2] [73-8] at 20:2–23:8. The midway ramp is carpeted but contains a two-foot long, gray, uncarpeted section in the middle. *See* [88] at 24:1–7. As a result, the midway floor is uneven.[3] A metal strip runs along each side of the uncarpeted section to separate it from the carpeted sections. [86-3]. Because the uncarpeted section sits over Lake Michigan, its incline may vary based upon the water level. *See* [86-4] ¶¶ 6–8; [73-11] at 63:14–17. At the time of the incident, Defendants had placed a double-sided, caution sign on the uncarpeted section warning, in English, "Caution Please Watch Your Step Uneven Surfaces." [87-1] at 3.

While at the casino, Plaintiff did not eat or drink anything. *Id.* ¶ 3. At approximately 5:17 p.m., she decided to walk toward the buffet via the midway. *Id.* ¶ 6. She had previously traveled on this path without issue, including earlier that day; Plaintiff had been a weekly visitor of the casino for over thirty years. *Id.* ¶¶ 5, 48. Plaintiff slowly walked down the midway using her cane. [73-6] at 15:18–21; [73-4] at 0:01–0:25. As she approached the uncarpeted section, Plaintiff placed her right foot over her left and became unstable. [73-6] ¶ 30:7–9; [79] at 0:21–0:27. She stopped for a moment to gain her balance facing the warning sign. [87-1] ¶ 9; [73-4] at 0:27–0:30. Seconds later, Plaintiff again placed her right foot over her left. [73-4]

---

[2] The parties and witnesses also refer to the midway as a "walkway," or "pavilion." *See* [73] ¶ 18; [87] ¶ 3; [87-1] ¶ 6.

[3] The parties and witnesses also refer to this area as the "traverse area," "wide gray transition strip" or "gray area" or "plate." *See* [87-1] ¶ 41; [73-11] at 129:6–18.

at 0:31–0:33. This time, however, she lost her balance and slowly fell to the floor on her right side. [87-1] ¶ 13.

The parties dispute the reason for Plaintiff's fall. Defendants claim Plaintiff fell because of her foot placement. *See* [73] ¶ 11, 37. Brian Grieser, Defendants' human factors and safety expert, opined that Plaintiff fell because she placed her right foot over her left, which caused her to lose her lateral stability and fall on her right side. *See* [73-11] at 46:21–47:12. Grieser determined that no slip, trip, or fall hazards were present at the location of Plaintiff's fall, and the transition between the carpeted to uncarpeted area of the midway was "reasonably safe" because there was not an "abrupt change in elevation." [73-10] at 5; [73-11] at 126:6–12.

Throughout this litigation, Plaintiff has offered three different explanations for her fall. Plaintiff's Amended Complaint alleges that she fell due to "defective flooring and/or inadequate lighting." [87-1], ¶¶ 8, 17. At her deposition, however, Plaintiff testified that the "only cause" of her fall was the "sticky surface that her shoe got stuck on." [73-6] at 31:20–24; 32:11–14. She stated, "there was like something on the floor—it was like wet or something, and my – my shoe – my – my shoe got stuck, and my foot turned over and I fell to my side." *Id.* at 31:69. Plaintiff repeated this version of the incident in her affidavit, in which she testified, "I also felt some sticky substance under my shoe. My foot got stuck. I became unstable and lost my balance on an uneven surface by the metal strip." [86-4] ¶ 13. Plaintiff stated later in her affidavit that she fell "due to the sticky substance, the metal strip and due to the uneven surfaces." *Id.* ¶ 12.

After Plaintiff fell, Security Officers Leslie Brown and Mark Scott Jr. responded. [87-1] ¶¶ 17, 18. Scott testified that when he met Plaintiff at 5:17 p.m., Plaintiff admitted to him that she was diabetic, had not eaten in several hours, and became dizzy and fell due to low blood sugar. [73-8] at 53:4–55:12. Consequently, at 5:27 p.m., a security officer brought Plaintiff an 8-ounce glass of orange juice, which she drank until Medic Tonya O'Parka arrived, at 5:33 p.m. [73] ¶ 19; [87-1] ¶ 22 [73-7] at 43:5–7; [73-8] at 65:18–66:13. O'Parka similarly testified that Plaintiff told her what she told Scott: that she began to feel dizzy and fell down. [73] ¶ 23; [73-7] at 48:14–49:6.

At 5:36 p.m., O'Parka measured Plaintiff's blood sugar level; it registered 88. [73-7] at 30:24. Although 88 falls within the normal range of 80 to 120, O'Parka concluded that Plaintiff had experienced hypoglycemia, or low blood sugar, because Plaintiff had already consumed orange juice, which can dramatically increase blood sugar. [87-1] ¶ 27; [93] ¶ 10.

As a result of the incident, Plaintiff suffered injuries to her head, neck, back, and hip. [93] ¶ 22. Plaintiff was transported by ambulance to St. Catherine Hospital for treatment. *Id.* ¶ 20. She subsequently received hip surgery and physical therapy, but continues to suffer severe pain and requires the assistance of a walker for balance. *Id.* ¶ 22.

On September 10, 2020, Plaintiff filed this lawsuit against Defendants for negligence, [2], [24]. Defendants now move for summary judgment. [72].

## II. Legal Standard

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the non-moving party. *King v. Hendricks Cty. Comm'rs*, 954 F.3d 981, 984 (7th Cir. 2020). The non-moving party bears the burden of identifying the evidence creating an issue of fact. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021–22 (7th Cir. 2018). To satisfy this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Barnes v. City of Centralia*, 943 F.3d 826, 832 (7th Cir. 2019). Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; "there must be evidence on which the jury could reasonably find" for the non-moving party. *Anderson*, 477 U.S. at 252.

## III. Discussion

In their motion, Defendants argue summary judgment should be granted because: (1) they did not have any actual or constructive knowledge of a dangerous

condition, and thus did not owe Plaintiff a duty to take any actions concerning the midway; and even so, any duty was satisfied by the warning sign present at the site of Plaintiff's fall; (2) no dangerous condition existed where Plaintiff fell; and (3) Plaintiff's fall was caused by improper foot placement, as well as dizziness and low blood sugar, rather than a condition at the Majestic Star Casino. The Court considers each argument in turn below.

The "mere allegation of a fall is insufficient to establish negligence, and negligence cannot be inferred from the mere fact of a fall." *Al-Kassar v. United States*, No. 2:18-cv-00086, 2023 WL 6304875, at *10 (S.D. Ind. Sept. 28, 2023) (quoting *Taylor v. Cmty. Hosps. of Indiana, Inc.*, 949 N.E.2d 361, 364 (Ind. Ct. App. 2011)). To establish a negligence claim under Indiana law,[4] Plaintiff must prove that: (1) Defendants owed her a duty of care; (2) Defendants breached that duty; and (3) the breach proximately caused injury to Plaintiff. *Weaver v. Speedway*, 28 F.4th 816, 820 (7th Cir. 2022) (citing *Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016)).

Plaintiff's status on Defendants' land is "key" in determining the nature of the duty of care owed to her. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1088 (7th Cir. 2018). The parties agree that Plaintiff was a business invitee of Defendants. [73] at 2–3; [84] at 10. Thus, Defendants owed her a general duty to exercise "reasonable

---

[4] Because this case is before this Court under diversity jurisdiction, state substantive law applies. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1086 (7th Cir. 2018). Without dispute, Indiana law governs because Indiana has the "most significant relationship" to the case; Plaintiff was injured at Defendants' casino located in Indiana, and no other forum has a more significant relationship with the occurrence and the parties. *See Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 916 (7th Cir. 2006).

care for her protection while she remained on the premises." *Waldon v. Wal-Mart Stores, Inc.*, 943, F.3d 818, 821–22 (7th Cir. 2019) (citing *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012)); *Austin*, 885 F.3d at 1088.

Under Indiana premises liability law, Restatement (Second) of Torts § 343 (Am. L. Inst. 1965) delineates this duty:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he:

(1) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

(2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(3) fails to exercise reasonable care in protecting them against the danger.

*Waldon,* 943 F.3d at 822 (quoting Restatement (Second) of Torts § 343) (Am. L. Inst. 1965)). For liability to attach, each of these three elements must be present. *Id.* (citing *Rogers v. Martin*, 63 N.E.3d 316, 322 (Ind. 2016)).

Indiana courts also recognize the corollary principle found in Restatement (Second) of Torts § 343A(1) (Am. L. Inst. 1965), which should be read together with § 343. *See Weaver*, 28 F.4th at 821. In cases of an unreasonable risk, a landowner is not liable to his invitees "for physical harm caused to them 'by any activity or condition on the land whose danger is known or obvious to the invitee, unless the possessor should anticipate the harm despite such knowledge or obviousness.'" *Darnell v. Wal-Mart Stores, Inc.*, No. 1:16-cv-02754, 2023 WL 573094, at *2 (S.D. Ind.

Jan. 26, 2018) (quoting *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990) (emphasis added)); *Pickens v. Wal-Mart Stores East, LP*, No. 14-cv-318, 2015 WL 4997064, at *7 (N.D. Ind. Aug. 20, 2015). A landowner has no generalized duty to ensure a "business invitee's safety while on the premises." *Pickens*, 2015 WL 4997064, at *6 (quoting *Schultz v. Kroger Co.,* 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012)).

### A. Plaintiff has failed to establish that Defendants owed her a duty

A landowner must have actual or constructive knowledge of a condition on the premises that poses an unreasonable risk of harm before liability can be imposed. *See, e.g., Austin,* 885 F.3d at 1089 (affirming summary judgment where defendant presented insufficient evidence of defendant's knowledge of substance on floor); *Waldon*, 943 F.3d at 820 (affirming summary judgment where defendant did not have actual or constructive knowledge of hanger on the floor).

#### i. Actual or Constructive Knowledge

Regarding Defendants' knowledge, Plaintiff must present evidence that Defendants were aware of the claimed unreasonably risky condition at issue to defeat summary judgment. *See id.* She may satisfy this burden by showing actual knowledge (*i.e.,* that Defendants knew of the condition), or constructive knowledge (*i.e.,* that Defendants "by exercise of reasonable care would discover" the condition). *Waldon,* 943 F.3d at 820. Constructive knowledge may be found where a specific condition "has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if a [landowner], his

agents or employees had used ordinary care." *Id.* (quoting *Schulz v. Kroger*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012)).

Defendants first argue that they did not have actual or constructive knowledge of a dangerous condition at the casino, and thus did not owe Plaintiff a duty of care. [73] at 3. Plaintiff counters that the warning sign placed upon the uncarpeted portion of the midway proves that Defendants knew about the uneven flooring. [84] at 6. As a preliminary matter, Plaintiff does not argue, let alone present evidence, that Defendants knew, or in the exercise of ordinary care should have known, of: (1) any foreign substance on the floor or (2) any inadequacy in lighting. *See id.* Thus, this Court need only assess Defendants' actual or constructive knowledge of the purported "uneven" flooring.[5]

In support of her theory, Plaintiff cites two Eleventh Circuit cases, *Rios v. MSC Cruises*, No. 20-14811, 2021 WL 4100378, at *2 (11th Cir. Sep. 9, 2021) and *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 721 (11th Cir. 2019), which hold that warning signs may serve as notice of a dangerous condition if the warning is sufficiently

---

[5] Plaintiff cannot maintain a negligence claim based upon any alleged substance on the floor because the record contains no evidence of Defendants' knowledge with respect to any condition other than uneven flooring. Regarding a sticky substance, there is no evidence of actual knowledge; Defendants' employees were instructed to "keep their eyes open for potential hazards" and security regularly patrolled the midway where Plaintiff fell, [73-5] at 6, yet there is no evidence that anyone ever saw any substance. Without evidence of the "sticky" substance, Plaintiff cannot demonstrate the substance remained on the floor so long that Defendants had constructive notice of any substance. *See Austin,* 885 F.3d at 1088–89 (affirming summary judgment where plaintiff failed to present evidence of how long any alleged hazard was on the floor, and thus there was no evidence that Walgreen had a chance to respond) (Indiana law). The Seventh Circuit has explained that the length of time is "of critical importance" in determining whether "in the exercise of ordinary care [the substance's] presence should have been discovered." *Reid v. Kohl's Dep't Stores*, 545 F.3d 479, 482 (7th Cir. 2008) (quoting *Torrez v. TGI Friday's Inc.*, 509 F.3d 808, 811 (7th Cir. 2007)); *see also Zuppardi v. Wal-Mart Stores, Inc.,* 770 F.3d 644, 651 (7th Cir. 2014) (finding plaintiff failed to meet her burden of demonstrating Wal-Mart's constructive notice of the puddle that caused her fall because she presented "next to no evidence of how much time elapsed between the spill and the fall") (Illinois law).

connected with the dangerous condition. Although not binding, these cases remain persuasive authority for this Court to consider.

In *Guevara*, the court held that "a sign on a step that read 'ATTENTION! FOR YOUR OWN SAFETY PLEASE USE THE HANDRAIL. WATCH YOUR STEP' was sufficiently connected to the danger—the step down—to permit an inference that the cruise line had actual or constructive notice that the step down could be dangerous." 920 F.3d at 715, 721–22. In contrast, in *Rios*, the court held that a small "Watch Your Step" sign was insufficient to establish the landowner's knowledge of inadequate lighting around the step where the plaintiff fell because the warning was not sufficiently connected to the condition. 2021 WL 4100378, at *2.

Here, the Court agrees with Plaintiff that the warning sign here which reads, "Caution Please Watch Your Step Uneven Surfaces," is sufficiently connected to the specific danger—the floor's uneven surface—to demonstrate Defendants' knowledge of the condition. The question to determine the existence of a duty then, is whether a reasonable jury could determine that the uneven flooring was, in fact, a *dangerous* condition, *i.e.,* that it posed an "unreasonable risk of harm" to Defendants' invitees.

### ii. Unreasonable Risk of Harm

Landowners only owe their invitees a duty to take reasonable care to protect them against conditions involving an unreasonable risk of harm. *Pickens*, 2015 WL 4997064, at *6; *Darnell,* 2018 WL 573094, at *3. Conditions that pose "only a reasonable risk of harm" do not trigger a landowner's duty to protect and cannot

support a finding of premises liability against a landowner." *Pickens,* 2015 WL 4997064, at *6. Under Indiana law, a condition poses an unreasonable risk of harm when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *Converse v. Elkhart Gen. Hosp., Inc.*, 120 N.E.3d 621, 626 (Ind. Ct. App. 2019) (internal citations omitted). Plaintiff must produce sufficient evidence from which a jury could find that the uneven flooring "created an unreasonable risk of harm" to Plaintiff "that she could not have expected to recognize on her own." *See Weaver*, 28 F.4th at 822.

Plaintiff has failed to carry this burden.[6] Plaintiff first attempts to create an issue of material fact by asserting that there is no evidence of the weather and tide conditions of Lake Michigan at the time of the incident, and therefore, there is no way to determine the incline of the uncarpeted portion of the midway at the time of the incident. *See* [84] at 8. Plaintiff speculates that tide conditions might have caused an "abrupt change in elevation" in the flooring when Plaintiff fell, by shifting the floor's surface. *See id.* at 6, 8–9 ("it is uncertain."). This speculative theory is unsupported by the record, and Plaintiff's guess about what may have happened cannot be used to defeat summary judgment. *See, e.g., Weaver*, 28 F.4th at 824–25 (noting that plaintiff's speculation as to what might have occurred cannot be used to defeat summary judgment).

---

[6] Plaintiff only argues that the uneven flooring constituted a dangerous condition; she seemingly abandons her argument that lighting, or some sticky substance on the ground constituted the dangerous conditions upon which liability may be predicated. *See* [84] at 7–9.

Plaintiff's theory of how the flooring could have created an unreasonable risk of harm is also contradicted by the surveillance video, which reveals no shift in the floor of any kind. *See Scott v. Harris*, 550 U.S. 372, 378–81 (2007) (finding that despite having to draw reasonable inferences in favor of the non-moving party, the court was not required to believe the non-movant's version of events when a videotape exists that "utterly discredits" it); *see also Lewis v. Menard* No. 118-cv-02655, 2021 WL 3164405, at *6 (S.D. Ind. July 27, 2021) (finding plaintiff's deposition testimony insufficient to support a finding that the threshold constituted a dangerous condition when his version of the facts was contradicted by the surveillance video). And as Plaintiff notes in her response brief, according to O'Parka, if the water was high or choppy enough to impact the midway ramp, Defendants would have closed it. *See* [84] at 8; *see also* [73-7] at 40:13–17. Defendants' policy and practice thus also undermines Plaintiff's speculative theory.

Indeed, the surveillance video shows that the transition in elevation from the carpeted to uncarpeted portion of the midway was almost negligible at the time of the fall; Defendants' expert, Grieser, measured the change in elevation to be a quarter of an inch, which he determined to be "reasonably safe" and not an "abrupt change in elevation." [73-11] at 126:6–12; [73] ¶ 41. While Grieser's measurements were taken two years after the incident, Plaintiff offers no conflicting evidence to support a reasonable counter conclusion that the change in elevation on the day of the fall remained substantial enough to pose an unreasonable risk of harm.

*Weaver v. Speedway* is instructive. 28 F.4th at 822. In *Weaver*, the plaintiff sued the owner of a Speedway gas station for negligence after she tripped over an unpainted curb outside of the store and fell. *Id.* at 818. As here, the defendant argued that the change in elevation did not pose an unreasonable risk of harm to the plaintiff. *Id.* at 88. The Court relied upon the Indiana Court of Appeals' decision in *Walters v. JS Aviation, Inc.*, 81 N.E.3d 1160, 1163 (Ind. Ct. App. 2017), which observed that "steps and stairs are an everyday occurrence, and invitees are generally expected to see them and know how to use them," but noted a particular step could pose an unreasonable risk based upon its "character, location, or surrounding conditions," *Weaver*, 28 F.4th at 822 (citing *Walters*, 81 N.E.3d at 1163). Finding no evidence that the area surrounding the curb rendered it particularly dangerous, the court affirmed the entry of summary judgment for defendant. *Id.* at 825.

Here, the transition in the flooring is minimal and the video captures the character, location, and surrounding conditions of the area of the midway where Plaintiff fell. As in *Weaver*, 28 F.4th at 822, there is nothing remarkable. *See generally* [73-4]. Far from showing anything that would render the transition from carpet to no-carpet to be a dangerous condition, the video shows just how minor the transition is, and the record contains no evidence to the contrary. *Id.*

One more consideration is relevant: the absence of prior incidents and complaints. As Defendant points out, as a regular of the casino, Plaintiff had previously traversed the same midway numerous times, and had neither fallen nor complained about the uneven flooring; she successfully crossed the midway many,

many times, including when she first arrived at the casino on the date of the incident. [87-1] ¶ 48. Like Plaintiff, Defendants' other patrons also regularly crossed the midway's uneven flooring without any issue; the record shows that no other incidents have occurred in the area where Plaintiff fell, and no complaints have been made about the area. *Id.* ¶ 47. In the video evidence, several patrons can be viewed seamlessly crossing the midway without hesitation or incident. *Id.* The record thus shows that, to the extent the area posed any risk of harm, the risk remained reasonable.

In an effort to save her claim, Plaintiff relies upon § 343A(1)[7] to argue that Defendants are liable for her harm because "Defendants could anticipate the harm despite such knowledge or obviousness." [84] at 5. This does not help Plaintiff's claim for two reasons. First, Plaintiff has failed to show the first element of § 343, that Defendants "should realize that [the uneven flooring] involves an *unreasonable harm*" to their invitees, and thus she cannot establish liability. *See* Restatement (Second of Torts) § 343 (Am. L. Inst. 1965) (emphasis added). Section 343A(1) only bears upon the second element of § 343, whether Defendants "should expect that [their invitees] will not discover or realize the danger, or will fail to protect themselves against it." *See, e.g., Maurer v. Speedway, LLC*, 774 F.3d 1132, 1137 (7th Cir. 2014). But all three elements must be present, and thus Plaintiff's claim fails. *Rogers*, 63 N.E.3d at 322.

---

[7] As noted above, § 343A(1) provides in relevant part, "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement Second (Torts) § 343A(1) (1965).

Second, the absence of other injuries or complaints by Plaintiff or anyone—in addition to the large, warning sign that Plaintiff admittedly stared at before her fall—suggests that the condition was known and obvious, and Defendants had no reason to anticipate that Plaintiff would not discover the uneven flooring, as she and others always had. *See Maurer,* 774 F.3d at 1137 (holding retail display was open and obvious condition and Speedway had no reason to anticipate plaintiff would not discover it where display was stationed in same location for over a year and a half, Speedway had never received a complaint or report of injuries, and had painted curb in front of display yellow to signify caution); *Darnell*, 2018 WL 573094, at *3 (finding that even if the exposed skid was dangerous, its obviousness was revealed by photo of location of incident, it was clear plaintiff appreciated the danger, and there was nothing to suggest Wal-Mart should have expected Plaintiff to fail to protect herself against it); *see also Weaver*, 28 F.4th at 821 (discussing situations where landowner "can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known and obvious danger").

Here, as in *Maurer*, the uneven flooring presented a known and obvious condition, and there is no factual support for the argument that Defendants should have expected Plaintiff would "not discover or realize the danger" or would "fail to protect herself against it." *Weaver*, 28 F.4th at 821.

The mere fact that the incident occurred does not automatically render the uneven flooring a dangerous defect on Defendants' property. *See Taylor*, 949 N.E.2d at 364. Because the record contains no evidence from which a reasonable jury could

conclude that the uneven flooring posed an unreasonable risk of harm to Plaintiff, she has failed to prove that Defendants owed her any duty to protect her from the uneven flooring on the midway. Therefore, Plaintiff's negligence claim fails, and Defendants are entitled to summary judgment.

### B. Plaintiff has failed to establish breach

Because Plaintiff has failed to establish that Defendants owed her a duty of care with respect to the uneven flooring, Plaintiff also cannot establish breach. Nonetheless, even if such a duty existed, the Court agrees with Defendant that the placing of a large, double-sided warning sign directly in front of the uneven flooring which warns, "Caution Please Watch Your Step Uneven Surfaces," satisfied any such duty here, considering the slight nature of the elevation change and the minor risk, if any, that it posed. [73-11] at 126:6–12. Indeed, the surveillance video depicts just how large and noticeable the warning sign was, which Plaintiff is seen directly facing before her fall. *See* [87-1] ¶ 9; [73-4] at 0:27–0:30.

The law does not require that a premises owner be an insurer against injuries. *Schultz,* 963 N.E.2d at 1144. A business invitee is simply "entitled to expect" that the possessor will take "reasonable care," and having discovered a condition, "either to make it reasonably safe or to give warning of the actual condition and the risk involved therein." *Perdue v. Greater Lafayette Health Servs.*, 951 N.E.2d 235, 240 (Ill. App. Ct. 2011) (citing Restatement (Second) of Torts § 343, *cmt.* d). On this record, this Court finds that no reasonable jury could find that Defendants breached a duty of care owed to Plaintiff.

### C. Plaintiff has failed to establish causation

Even if Plaintiff could demonstrate the first two elements of a negligence claim (and she cannot), her claim would still fail on the third element. Defendants argue that Plaintiff has failed to set forth any evidence that the uneven flooring proximately caused her fall. [73] at 5. Defendants contend that instead, the record unequivocally shows that Plaintiff fell because of her foot placement, in addition to her being dizzy, diabetic, and not having eaten since the morning. *Id.* Plaintiff argues that the cause of her fall remains a material issue of fact that precludes summary judgment. The Court disagrees.

Under Indiana law, Plaintiff must prove a "causal connection between the negligence and the hurt." *Lin v. Sheraton License Operating Co.*, No. 1:18-cv-02158, 2020 WL 6274839, at *5 (S.D. Ind. Oct. 26, 2020) (quoting *Peters v. Forster*, 804 N.E.2d 736, 739 (Ind. 2004) (citation omitted)). At a minimum, this requires proof of causation in fact—that is, "that the harm would not have occurred 'but for' the defendants' conduct." *Taylor*, 949 N.E.2d at 364 (citation omitted). Relevant here, evidence establishing a "mere possibility" of cause or which "lacks certainty or probability is not sufficient evidence by itself to support a verdict." *Id.* Causation may be proved by direct or circumstantial evidence, but only if the evidence has "sufficient probative force to constitute a basis for a legal inference rather than mere speculation." *Martin v. Ramos*, 120 N.E.3d 244, 251 (Ind. Ct. App. 2019) (quoting *Smith*, 639 N.E.2d at 1034).

Here, Plaintiff relies upon mere speculation to establish causation. Plaintiff asserts that her exact foot placement at the time of her fall is obscured by the presence of another individual, and thus there is a genuine issue of material fact as to causation. [84] at 12. Essentially, Plaintiff argues that the uneven flooring *might have* caused her fall. *Id.* at 14.

Again, Plaintiff's unsupported theory of causation cannot create a genuine dispute of material fact in the absence of record evidence supporting it. *See Martin*, 120 N.E.3d at 251. Indeed, Plaintiff testified to the contrary herself under oath, both during her deposition and in her affidavit. At her deposition, counsel for Defendants asked her, twice, whether the uneven surface of the midway floor caused her to fall; both times, she responded "Oh, I don't know."[8] [73-6] at 31:18–32:14. Instead, Plaintiff testified that the "only cause" of her fall was the sticky surface that her shoe got stuck on. *Id.* Subsequently, Plaintiff stated in her affidavit that she "felt some sticky substance" on her shoe, her "foot got stuck," and she "became unstable and lost

---

[8] Plaintiff testified as follows:

Q: Miss Cruz, are you claiming that the floor was wet at the time of your fall?
A: Wet or like sticky, because that's where my – my, uh – my shoe got stuck.
Q: Okay, So you think your shoe got stuck on something on the floor; is that correct?
A: Yes.
Q: Okay. Are you claiming that a metal plate on the ground caused you to fall?
A: Oh, I don't know. Oh, I don't know.
Q: … Do you know if there was any uneven surface where you fell?
A: Yes.
Q: Do you think the uneven surface caused you to fall?
A: Oh, I don't know.
Q: So, is it correct that you believe the only cause of your fall was the sticky surface that your shoe got stuck on?
A: Yes.

[73-6] at 31:18-32:14.

[her] balance *on* an uneven surface by the metal strip." [86-4] ¶ 10 (emphasis added). There is a difference, of course, between falling *upon* an uneven surface, and falling *because* of it. Although Plaintiff subsequently states in her affidavit that she fell "due to the sticky substance, the metal strip, and due to the uneven surfaces," *id.* ¶ 12, this statement is not supported by any version of the fall she has offered.

Furthermore, as explained above, Plaintiff's statement regarding "uneven surfaces" cannot create a genuine dispute of fact in the face of contradictory surveillance video. *Scott*, 550 U.S. at 378-81. The video clearly depicts Plaintiff struggling to walk down the midway with her cane in an unsteady manner and losing her balance after placing her right foot over her left, twice within a matter of seconds. *See* [73-4] at 0:21–0:35. Plaintiff contends that a patron blocks the view of Plaintiff's feet while she is falling, but Plaintiff's right foot can be seen crossing her left before the patron obscures the view of her feet touching the floor. *Id.* at 0:30–0:33; [73-11] at 44:23–45:4, 115:4–11. Notably too, the video contradicts Plaintiff's other explanations for the fall: the video shows a well-lit midway, and close-ups of the flooring reveal no apparent sticky substance whatsoever. *See generally* [73-4].

The video is, however, consistent with Grieser's explanation of the incident: he testified that Plaintiff's crossing her feet caused her to lose her lateral stability and fall on her right side. [73-11] at 46:21–47:12. Grieser explained that a person is much less stable when she crosses her feet rather than walking with her feet shoulder width apart, *id.* at 46:7–10, and the video depicts Plaintiff "waving her left arm trying to

catch her stability" after she crosses her feet, before she falls to the right, "which is what you'd expect when you cross your legs over," *id.* at 53:12–18.

Most telling, Plaintiff had the opportunity to explain the reason for her fall immediately after the incident, and at that time, she told O'Parka and Scott that she was a diabetic, had not eaten in several hours, and believed she had low blood sugar. *See* [87-1] at 32. Based upon that representation, a security officer gave Plaintiff orange juice and checked Plaintiff's blood sugar level, which, though normal, was lower than when Plaintiff arrived at the boat. [74] ¶ 19; [73-7] at 30:24, 43:5–7; [73-8] at 65:18–66:13. Significantly, immediately after she fell, Plaintiff did not mention anything about an uneven surface, inadequate lighting, or any sticky substance. [87-1] ¶ 32. Because the record contains no evidence from which a reasonable jury could find that an unreasonably dangerous condition caused Plaintiff's fall, her negligence claim fails at the third element as well.

### IV. Conclusion

For the reasons explained above, this Court grants Defendants' motion for summary judgment, [72], and directs the Clerk to enter judgment in Defendants' favor on Plaintiff's claim.

Dated: March 26, 2024                Entered:

                                                                  John Robert Blakey
                                                                  United States District Judge